UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ADAM SHAMADOVICH DZHABRAILOV,

                                    Petitioner,

v.                                                                    OPINION AND ORDER

THOMAS DECKER, in his official capacity as          20-cv-3118 (PMH)
Director of the New York Field Office of U.S.
Immigrations & Customs Enforcement, CHAD
WOLF, in his official capacity as Acting
Secretary of the U.S. Department of Homeland
Security, and CARL E. DUBOIS in his official
capacity as Sheriff of Orange County, New
York,

                                    Respondents.

-------------------------------------------------------X

PHILIP M. HALPERN, United States District Judge:

Petitioner, Adam Shamadovich Dzhabrailov, filed a petition in this Court on April 18, 2020

for a writ of habeas corpus under 28 U.S.C. § 2241 naming as Respondents Thomas Decker, in his

official capacity as Director of the New York Field Office of U.S. Immigrations & Customs

Enforcement, Chad Wolf, in his official capacity as Acting Secretary of the U.S. Department of

Homeland Security, and Carl E. DuBois in his official capacity as Sheriff of Orange County, New

York (collectively "Respondents"). (Doc. 1, "Pet. Habeas Appl."). Petitioner brings two claims for

relief asserting that his constitutional rights under the Due Process Clauses of the Fifth and

Fourteenth Amendments to the United States Constitution have been violated by his confinement

under conditions that pose an excessive risk to his health.[1] Petitioner alleges that, in light of the

COVID-19 pandemic, Respondents have failed to (1) protect Petitioner, *id.* ¶¶ 110–13, and (2)

---

[1] At oral argument, Petitioner asserted that there was a third claim for relief in the petition relating to an
unconstitutional prolonged period of detention which will be dealt with *infra.*

provide adequate medical care, *id.* ¶¶ 114–16. Alternatively, Petitioner asks this Court to grant him bail and then release under the legal framework established in *Mapp v. Reno*, arguing that bail and release is appropriate because (1) Petitioner's habeas petition raises substantial claims and (2) extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective. *See* Pet. Habeas Appl. ¶¶ 103–05 (citing *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001)).

On April 19, 2020, Petitioner filed an application by order to show cause for a temporary restraining order and preliminary injunction. (Doc. 2, "Pet. Prelim. Inj. Appl."). Petitioner seeks a court order requiring Respondents to release Petitioner "upon his own recognizance, subject to reasonable and appropriate conditions" or, in the alternative, Petitioner requests "that the Court conduct a telephonic bail hearing where Respondents must prove, by clear and convincing evidence, that [Petitioner's] ongoing detention is necessary and does not violate his due process [rights]." *Id.* at 1.

On April 21, 2020, Judge Katherine Polk Failla ordered that Respondents show cause and file a return and opposition as to why Petitioner's habeas application and motion for a temporary restraining order and preliminary injunction should be denied. (Doc. 5). Respondents filed their return and opposition to the motion on April 27, 2020. (Doc. 18, "Resp't Return"). On May 1, 2020, Petitioner filed his reply to Respondents' return and opposition. (Doc. 21, "Pet. Reply").

On May 20, 2020, the Court held a telephonic hearing on the preliminary injunction motion and the merits of the habeas petition.

For the reasons set forth below, Petitioner's motion for a preliminary injunction, including the request for a bail hearing, is DENIED. Additionally, Petitioner's habeas petition is DISMISSED.

# BACKGROUND

I.  <u>Immigration History</u>

Petitioner, a 33-year-old native of the former Soviet Union and a Russian citizen, entered the United States without inspection in or around April 2009. Pet. Habeas Appl. ¶ 14. On April 23, 2010, Petitioner filed an asylum application, which was granted on June 8, 2010. *Id.* On March 6, 2013, an INTERPOL Red Notice was issued for Petitioner related to a Russian arrest warrant which alleged that Petitioner was part of an organized criminal group in Russia. (Doc. 19, "Mem. of Law in Supp. Resp't Return," at 2). On November 2, 2017, the United States Citizenship and Immigration Services ("USCIS") issued a Notice of Intent to Terminate Petitioner's asylum status. Pet. Habeas Appl. ¶ 15. The Notice included one charge of removability indicating that USCIS had obtained evidence that Petitioner's asylum application was fraudulent. Mem. of Law in Supp. Resp't Return at 3. On December 20, 2017, ICE added additional charges of removability asserting that Petitioner engaged in a terrorist activity. *Id.* at 4. On February 1, 2018, an immigration judge determined that the charges of removability levied against Petitioner had been established. Pet. Habeas Appl. ¶ 15. On April 17, 2018, Petitioner sought deferral of removal from the United States asserting that his removal would be in violation of the Convention Against Torture ("CAT"). *Id.* ¶ 16. On August 30, 2019, the Immigration Court granted Petitioner deferral of removal under the CAT. *Id.* The Department of Homeland Security ("DHS") appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"). *Id.* On February 21, 2020, the BIA affirmed the Immigration Court's decision deferring removal pursuant to the CAT and remanded the case to the Immigration Court to close Petitioner's case. *Id.* ¶ 17. On April 24, 2020, the Immigration Judge issued a final decision ordering that the Petitioner be removed to Russia but

deferring removal under the CAT. Mem. of Law in Supp. Resp't Return at 8. On April 29, 2020, the Immigration Court issued its final order. (Doc. 20).

Pursuant to 8 U.S.C. § 1231, Petitioner is currently being detained pending his removal. Section 1231 provides that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). Due to the Immigration Court's decision that Petitioner's removal to Russia would be in violation of the CAT, ICE is presently in the process of attempting to find a country, other than Russia, that will accept Petitioner for the purposes of removal. Mem. of Law in Supp. Resp't Return at 8. If ICE determines that there is no willing third country, ICE will release Petitioner. *Id.*

## II.   COVID-19 Pandemic

Petitioner, who is currently housed at the Orange County Jail ("OCJ"), asks the Court to order that he be discharged from OJC in light of the COVID-19 pandemic. Specifically, Petitioner argues that he is confined in "close quarters without protection" and that "the Court should immediately issue a temporary restraining order [and] preliminary injunction requiring ICE to release Petitioner from custody pending resolution of his writ application so he has a chance to avoid infection and potential death from COVID-19." Pet. Habeas Appl. ¶ 29.

Petitioner asserts that the OCJ is "woefully unprepared and incapable of taking necessary precautions to protect people in their custody" from COVID-19. *Id.* ¶ 51. At the time Petitioner submitted his habeas application, COVID-19 had not yet reached OCJ, *id.* ¶ 52, but Petitioner nonetheless argues that "[i]t will be nearly impossible to prevent widespread infections inside [OCJ] once one person contracts the virus because detainees live, sleep, and use the bathroom in close proximity with others," *id.* ¶ 63.

Respondents aver that Petitioner "has not alleged any facts to suggest that he is at an elevated or heightened risk of illness because of any underlying health conditions or concerns." Mem. of Law in Supp. Resp't Return at 8. With respect to Petitioner's allegation that he has a "chronic heart ailment," *see* Pet. Habeas Appl. at 2, Respondents argue that Petitioner's medical records make no mention of such a heart condition, and, in any event, Petitioner does not allege that his condition makes him a high risk individual according to Centers for Disease Control ("CDC") guidance. Mem. of Law in Supp. Resp't Return at 9 n.2. Petitioner concedes that his condition is "not . . . the kind of chronic medical problems that have been the trigger in most of the COVID-19 related cases that have resulted in the release of numerous civil and criminal detainees." Pet. Reply at 13 n.26. On May 19, 2020, Petitioner supplemented the record and filed two documents which purport to show that Petitioner was diagnosed with Cardiac Vegetative Dysfunction after two visits to a doctor in Russia in March and May 2008. (Doc. 32).

Respondents further argue that OCJ has put into place adequate measures to protect detainees from COVID-19. Mem. of Law in Supp. Resp't Return at 11–12. Respondents assert that as of April 24, 2020, there were no confirmed cases of COVID-19 at OCJ, and, as of April 27, 2020, there were no symptomatic detainees in Petitioner's housing unit. *Id.* at 12. Respondents also assert that ICE has been following guidance issued by the CDC regarding how to screen and test ICE detainees to prevent exposure to COVID-19. *Id.* at 13–14. By letter dated May 5, 2020, Respondents informed the Court, with competent evidence, that as of May 5, 2020 there were no confirmed positive COVID-19 ICE detainees or inmates at OCJ and provided the Court an update

on additional precautionary measures taken by OCJ in response to the COVID-19 pandemic. (Doc.

22).[2]

## STANDARD OF REVIEW

I.   Fed. R. Civ. P 65

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be

granted unless the movant, by a clear showing, carries the burden of persuasion.'" *C.D.S., Inc. v.*

*Zetler*, 217 F. Supp. 3d 713, 716 (S.D.N.Y. 2016) (quoting *Grand River Enter. Six Nations, Ltd.*

*v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). To obtain a preliminary injunction, a petitioner must

demonstrate: "1) irreparable harm absent injunctive relief; 2) either a likelihood of success on the

merits, or a serious question going to the merits to make them a fair ground for trial, with a balance

of hardships tipping decidedly in the [petitioner's] favor; and 3) that the public's interest weighs

in favor of granting an injunction." *Westchester Fire Ins. Co. v. DeNovo Constructors, Inc.*, 177

F. Supp. 3d 810, 811–12 (S.D.N.Y. 2016) (quoting *Metro. Taxicab Bd. of Trade v. City of New*

*York*, 615 F.3d 152, 156 (2d Cir.2010)).

"A showing of irreparable harm is the single most important prerequisite for the issuance

of a preliminary injunction."  *C.D.S.*, 217 F. Supp. 3d at 716 (quoting  *Faiveley Transport Malmo*

*AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009)). "To satisfy the irreparable harm

requirement, [petitioner] must demonstrate that absent a preliminary injunction they will suffer an

injury that is neither remote nor speculative, but actual and imminent, and one that cannot be

remedied if a court waits until the end of trial to resolve the harm." *Id.* at 716–17 (citing *Grand*

*River*, 481 F.3d at 66).

---

[2] Respondents' May 5, 2020 letter summarizes the Declaration of Colonel Anthony Mele, Correctional Administrator of the Orange County Sheriff's Office who, according to his Declaration, is responsible for correctional operations at OCJ and is familiar with the measures taken at OCJ to address the COVID-19 pandemic. (*See* Doc. 22-1).

II.   <u>Habeas Corpus petition brought pursuant to 28 U.S.C. § 2241</u>

A non-citizen, immigration-detainee petitioner seeking to challenge his detention pending removal may bring a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Basank v. Decker*, No. 20-CV-2518, 2020 WL 1953847, at *8 (S.D.N.Y. Apr. 23, 2020) ("An application for habeas corpus under 28 U.S.C. § 2241 is the appropriate vehicle for an [ICE detainee] in federal custody to challenge conditions" (citing *Roba v. United States*, 604 F.2d 215, 218–19 (2d Cir. 1979))); *Cruz v. Decker*, No. 18-CV-9948, 2019 WL 7572975, at *3 (S.D.N.Y. Aug. 27, 2019), *report and recommendation adopted*, No. 18-CV-9948, 2019 WL 6318627 (S.D.N.Y. Nov. 26, 2019) (same). Such a petition "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). When a petitioner brings a habeas petition pursuant to § 2241, the petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citing *Parke v. Raley,* 506 U.S. 20, 31 (1992)); *see also Cruz*, 2019 WL 7572975, at *3 ("To obtain [] relief [under § 2241], the petitioner must show violation of his rights by a preponderance of the evidence." (citing *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997))).

"[T]he equitable principles governing [§ 2241 are] reflected in the plenary discretion vested in habeas courts to 'hear and determine the facts, and dispose of the matter as law and justice require.'" *Pinkney v. Keane*, 920 F.2d 1090, 1093 (2d Cir. 1990) (citing 28 U.S.C. § 2243; *see also United States v. Triestman*, 178 F.3d 624, 629 (2d Cir. 1999) ("The remedies available in § 2241 motions are . . . governed by § 2243, which states [] that courts entertaining an application

for a writ of habeas corpus shall summarily hear and determine the facts and dispose of the matter as law and justice require." (internal quotations omitted)). Issuance of a writ of habeas corpus "is an extraordinary remedy" that should only be granted "in the exercise of a sound judicial discretion." *Pinkney*, 920 F.2d at 1093 (citing *Goto v. Lane*, 265 U.S. 393, 401 (1924)).

## ANALYSIS

The parties agreed during oral argument that it is appropriate for me to rule on Petitioner's pending motion for preliminary injunctive relief and the merits of Petitioner's habeas petition at the same time. *See* Fed. R. Civ. P. 65(a)(2) ("Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing."); *see also* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of [a petitioner's habeas petition] as law and justice require."); *see also, e.g., Jackson v. Capra*, No. 14-CV-202, 2015 WL 1064900, at \*1 (S.D.N.Y. Mar. 2, 2015) (considering Petitioner's habeas application and motion for preliminary injunction at the same time); *Pan v. Ashcroft*, No. 04-CV-6434, 2005 WL 1398601, at \*1 (W.D.N.Y. June 14, 2005) (same); *Cohn v. Fed. Bureau of Prisons*, 302 F. Supp. 2d 267, 269 (S.D.N.Y. 2004) (same). Accordingly, Petitioner's motion for a preliminary injunction and habeas petition will be examined seriatim.

I.   Petitioner's Application for Injunctive Relief

Petitioner seeks various forms of injunctive relief. In Petitioner's habeas petition he (1) seeks to "[e]njoin Respondents from moving the Petitioner from the New York City area while habeas proceedings are pending" and (2) asks that the Court "[o]rder Respondents not to re-detain Petitioner pending the culmination of removal proceedings against him, including all administrative or judicial appeals." Pet. Habeas Appl. at 37–38. In Petitioner's application by order to show cause for a temporary restraining order and preliminary injunction, Petitioner seeks to

"enjoin[] Respondents from arresting him for the purposes of civil immigration detention, during the pendency of removal proceedings against him." Pet. Prelim. Inj. Appl. at 13. And, in Petitioner's reply to Respondents' return and opposition, he asks the Court to "issue an order that ICE should not re-arrest or take him into custody during the pendency of these proceedings." Pet. Reply at 15.

As an initial matter, Petitioner's inconsistent, broad, and vague requests for injunctive relief run afoul of Fed. R. Civ. P. 65(d), which provides that "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d). Second Circuit case law makes clear that "injunctive relief should not be 'broader than necessary to cure the effects of the harm caused by the violation' and should be 'narrowly tailored to fit specific legal violations.'" *In re LightSquared, Inc.*, 539 B.R. 232, 243 (S.D.N.Y. 2015) (quoting *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 144 (2d Cir.2011)) (dismissing injunctive relief request because the requested relief was "overly broad and lacks the specificity required by [Fed. R. Civ. P.] 65"). These guiding principles prevent the Court from granting Petitioner's broad and vague requests for injunctive relief.

However, assuming *arguendo* that Petitioner's various requests for injunctive relief are not facially and fatally flawed, the Court nonetheless finds that Petitioner's request for injunctive relief—primarily a request that the Court order Petitioner's release from OCJ in light of the COVID-19 pandemic, *see* Pet. Habeas Appl. ¶ 29—fails on the merits.

Petitioner's request for injunctive relief is a request for the ultimate relief Petitioner seeks: release from OCJ. Ordinarily, this type of ultimate relief request is fatal to a preliminary injunction application because the reality is that the preliminary injunction stage of the litigation occurs well

in advance of any dispositive trial or hearing. In this case, however, the motion and petition are being decided simultaneously, and while a request for ultimate relief in this context is less concerning, nonetheless the ultimate relief request is fatal to this preliminary injunction application. The wherefore clause to Petitioner's habeas application asks that the Court, *inter alia*, "order Respondents to immediately release Petitioner, under any appropriate conditions, to end the violations of his due process rights and resulting harm he is suffering." *Id.* at 37–38. Petitioner's application for a temporary restraining order and preliminary injunction seeks that the Court "order[] Respondents to release [Petitioner], under any appropriate conditions." Pet. Appl. Prelim Inj. at 13. Respondents are correct that "generally, '[t]he purpose of a preliminary injunction is not to give the [petitioner] the ultimate relief it seeks.'" Mem. of Law in Supp. Resp't Return at 23 (quoting *WarnerVision Entm't Inc. v.Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996)). Indeed, when a Petitioner "seeks a preliminary injunction that either alters the status quo or would provide the ultimate relief sought in the underlying action" a heightened preliminary injunction standard applies. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995). Under this heightened preliminary injunction standard, "the movant must show a clear or substantial likelihood of success on the merits, and make a strong showing of irreparable harm in addition to showing that the preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (internal quotations and citations omitted); *see also Demirayak v. City of New York*, 746 F. App'x 49, 51 (2d Cir. 2018), *cert. denied sub nom.,* 139 S. Ct. 1600 (2019) ("Under this heightened standard, plaintiff must make a clear showing that he is entitled to the relief requested, or that extreme or very serious damage will result from denial of preliminary relief." (internal citations omitted)). Mindful of the heightened standard

that applies to Petitioner's request for injunctive relief, the Court will examine the preliminary injunction requirements seriatim.

First, Petitioner has not demonstrated a likelihood of success on the merits. Before addressing the two claims for relief identified in the petition as "First Cause of Action" and "Second Cause of Action," which Petitioner brings under the Due Process Clauses of the Fifth and Fourteenth Amendments alleging that (1) Respondents failed to adequately protect Petitioner, and (2) Respondents failed to provide Petitioner adequate medical care, Pet. Habeas Appl. ¶¶ 110–16, the Court must address an issue that arose during oral argument. At oral argument, counsel for Petitioner argued that Petitioner's habeas petition included a third claim for relief alleging that Petitioner is being subjected to an unconstitutional period of prolonged detention and should be released on that basis. The Court finds that Petitioner has not properly raised such a claim. The precatory language for Petitioner's first stated claim for relief alleges that the "Respondents' failure to adequately protect petitioner in light of the COVID-19 outbreak violates due process." Pet. Habeas Appl. at 36. The precatory language for Petitioner's second stated claim for relief alleges that the "Respondents' failure to provide adequate medical care and protection to people, such as Petitioner, at high risk of serious harm from COVID-19 violates due process." *Id.* at 37. Petitioner simply does not raise a claim that he has faced an unconstitutional prolonged period of detention and counsel's statements at oral argument asserting otherwise are zealous afterthoughts.

However, assuming *arguendo* that Petitioner did properly raise a claim alleging that he has been subject to an unconstitutional prolonged period of detention, the Court would nonetheless find that such a claim fails on the merits. Petitioner asserts that his purported third claim for relief is set forth in paragraph 78 of his petition (when the other discernible claims for relief are separately labeled and identified at paragraphs 110-16) as follows:

> [A]mong the factors to be weighed and balanced [when determining whether Petitioner's release is appropriate] is the length of time the alien has already been detained, whether they are responsible for the delay, whether the alien has asserted defenses to the removal, whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention and whether the continued duration of the detention is finite or near conclusion. *Yusuf v. Edwards*, *supra*.

Pet. Habeas Appl. ¶ 78.

Petitioner's reliance on *Yusef* is not helpful to his purported prolonged detention claim given the procedural posture of Petitioner's immigration proceedings. In *Yusef*, the petitioner was being detained pursuant to 8 U.S.C. § 1226(c). *Yusuf v. Edwards*, No. 18-CV-3605, 2019 WL 4198798, at *5 (S.D.N.Y. July 2, 2019) ("Since § 1231 is clearly inapplicable, petitioner's detention can only be governed by § 1226(c)."). Section 1226(c) addresses the detention of deportable criminal aliens who do not yet face a final order of removal. *See* 8 U.S.C. § 1226(c). Courts within the Second Circuit "have routinely held that, under § 1226(c), prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will – at some point – violate the right to due process.'" *Yusuf,* 2019 WL 4198798, at *7 (quoting *Sajous v. Decker*, No. 18-CV-2447, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018), *appeal withdrawn*, No. 18-2591, 2019 WL 4137822 (2d Cir. May 7, 2019). The factors Petitioner recites are therefore applicable to a situation in which a detainee is being held pursuant to § 1226(c) and no final order of removal exists.

There is no dispute in Petitioner's case, however, that a final order of removal does exist, and that Petitioner is therefore being detained pursuant to 8 U.S.C. § 1231(a)(2). The Court finds that the factors relied on by Petitioner are therefore inapplicable to his period of detention and a different framework is applicable to prolonged confinement claims brought by aliens detained pursuant to § 1231(a)(2). Section 1231(a)(2) provides that "[d]uring the removal period, the

Attorney General *shall* detain the alien[, and *u]nder no circumstance* during the removal period shall the Attorney General release an alien who has been found inadmissible under . . .   section 1227(a)(4)(B) of this title." 8 U.S.C. § 1231(a)(2) (emphasis added).[3] Petitioner's detention under § 1231(a)(2) is therefore mandatory during the removal period. The removal period is statutorily defined as 90 days. *Id.* § 1231(a)(1)(A). As relevant here, the 90-day period begins running on "[t]he date the order of removal becomes administratively final." *Id.* § 1231(a)(1)(B).

During oral argument, counsel for Petitioner asserted that Petitioner's removal order was administratively final as of February 21, 2020, the day that the BIA affirmed the decision of the Immigration Court and remanded the case to the Immigration Court to close Petitioner's case. *See* Pet. Habeas Appl. ¶ 17. Thus, Petitioner argued, the February 21, 2020 remand order should have triggered the beginning of the 90-day removal period. Respondents argued, alternatively, that the 90-day removal period began on April 29, 2020, the day that the Immigration Judge issued a final order of removal. *See* Doc. 20. April 29, 2020 is the correct trigger date for the removal period.

After the BIA remanded the case to the Immigration Court on February 21, 2020, additional steps needed to be taken before the removal order became administratively final. Specifically, ICE needed to run an updated background check. Mem. of Law in Supp. Resp't Return at 8. Subsequent to the remand, at a hearing on April 24, 2020, ICE reported to the Immigration Judge that an updated background check had been completed, and the Immigration Judge issued a final decision. *Id.* The Immigration Court's final order was then issued on April 29, 2020. *See* Doc. 20. The Court therefore rejects Petitioner's argument that the 90-day removal period commenced on February 21, 2020 as the plain language of 8 U.S.C. § 1231(a)(1)(B) provides that "[t]he removal period begins on . . . [t]he date the order of removal becomes administratively final." 8 U.S.C. §

---

[3] Petitioner was found removable under § 1227(a)(4)(B), (*see* Doc. 20-1), as two of Petitioner's charges of removability were brought pursuant to INA § 237(a)(4)(B) which is codified at 8 U.S.C. § 1227(a)(4)(b).

1231(a)(1)(B)(i). No administratively final removal order existed to trigger the 90-day removal

clock until April 29, 2020. *See Rodriguez v. Demarco*, No. 15-CV-3963, 2015 WL 4729272, at \*4

(E.D.N.Y. Aug. 8, 2015) (finding that the mandatory detention period began running "after the

entry of an administratively final order of . . . removal"); *Persaud v. Holder*, No. 10-CV-6506,

2011 WL 5326465, at \*2 (W.D.N.Y. Nov. 3, 2011) ("8 U.S.C. § 1231(a) authorized detention of

aliens, after entry of an administratively final order of deportation or removal"). Therefore, the

Court finds that at the time of this writing Petitioner has been detained pursuant to § 1231(a)(2)

for less than one month. Accordingly, if paragraph 78 of Petitioner's habeas petition were to be

construed as a third claim for relief, it would be dismissed as the claim alleged would be pursuant

to 8 U.S.C. § 1226(c) and that form of prolonged detention claim was mooted out when Petitioner

began his detention pursuant to 8 U.S.C. § 1231. *See Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir.

2003).  That is to say, even assuming that a third claim for relief is buried in paragraph 78 of

Petitioner's habeas petition, it is not viable because Petitioner's detention is pursuant to § 1231

and not § 1226.

Additionally, and as Petitioner concedes, a "literal application of 8 U.S.C. §1231(a)(2)"

mandates that the Attorney General keep Petitioner "detained for 90 days following a final order

of removal to afford the government an opportunity to locate a third country willing to accept

him." Pet. Reply at 4 (internal quotations omitted); *see also, e.g., Yusuf*, 2019 WL 4198798, at \*4

(holding that under § 1231 "[d]etention is mandatory for the 90-day removal period"); *Gjidija v.*

*United States*, No. 18-CV-0259, 2019 WL 2615438, at \*5 (S.D.N.Y. June 26, 2019), *report and*

*recommendation adopted*, No. 18-CV-0259, 2019 WL 3889854 (S.D.N.Y. Aug. 19, 2019) ("The

'shall' language in [8 U.S.C. § 1231(a)(2)] prescribes a mandatory course of action."). Petitioner

has not yet reached the end of the 90-day mandatory detention period. The Court is simply without

authority to modify the Congressional determination that certain non-citizens must be detained pending removal.

Furthermore, firmly established Supreme Court precedent holds that six months of detention following a final order of removal is "presumptively [a] reasonable period of detention" for a detainee detained pursuant to § 1231(a)(2). *Callender v. Shanahan*, 281 F. Supp. 3d 428, 434 (S.D.N.Y. 2017) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)). At oral argument, Petitioner's counsel argued that Petitioner has been detained since November 2017 and that the relevant period of detention is therefore thirty months. However, once a final order of removal has been entered, a constitutional challenge to the period of detention prior to the entry of a final order of removal is rendered moot. *See Wang*, 320 F.3d at 147. The relevant period of detention in Petitioner's case began when the Immigration Judge entered a final order of removal on April 29, 2020. Petitioner has been detained far less than the presumptively valid six-month period of detention following entry of a final order of removal pursuant to § 1231(a)(2). Accordingly, even if Petitioner had properly raised a claim for relief in his habeas petition alleging that his period of detention was in violation of his due process rights, the Court would be compelled to dismiss such a claim.

It must also be separately noted that the mandatory nature of Petitioner's detention precludes the Court from finding any likelihood of success in support of Petitioner's motion for a preliminary injunction.

Turning to the claims Petitioner actually denominated as "Causes of Action" in his habeas petition, the Court similarly finds that these claims are not likely to succeed because each fail on the merits. Petitioner's habeas application includes two related claims for relief brought under the Due Process Clauses of the Fifth and Fourteenth Amendments. Specifically, Petitioner alleges that

(1) Respondents have failed to adequately protect Petitioner, Pet. Habeas Appl. ¶¶ 110–13, and (2) Respondents have failed to provide Petitioner adequate medical care, *id.* ¶¶ 114–16. Petitioner's failure to protect claim is premised on the allegation that Respondents have failed to provide Petitioner adequate medical care. In such a situation, Petitioner's claims merge into a single claim in which Petitioner alleges he is being confined under unconstitutional conditions because prison officials are deliberately indifferent to his medical needs. *See Basank*, 2020 WL 1953847, at *9 n.5 ("[W]here, as here, a communicable disease renders the general conditions of confinement dangerous to Petitioners' health, and meeting Petitioners' medical needs requires that Respondents take specific measures to prevent their infection, the conditions of confinement and unmet medical needs claims essentially merge.").

"Immigration detainees can establish a due process violation for unconstitutional conditions of confinement by showing that a government official 'knew, or should have known' of a condition that 'posed an excessive risk to health,' and failed to take appropriate action." *Valenzuela Arias v. Decker*, No. 20-CV-2802, 2020 WL 1847986, at *6 (S.D.N.Y. Apr. 10) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)). Therefore, to demonstrate unconstitutional conditions of confinement Petitioner must show that (1) he is being housed under conditions that pose an excessive risk to his health, and (2) prison officials are deliberately indifferent to his medical needs. *Coronel v. Decker*, No. 20-CV-2472, 2020 WL 1487274, at *3 (S.D.N.Y. Mar. 27, 2020). The first prong of this test is objective and requires that a petitioner show that his conditions of confinement "pos[ed] an unreasonable risk of serious damage" to his health or safety. *Darnell*, 849 F.3d at 30. The second prong of the test requires that the petitioner demonstrate that prison officials "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee

even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

As to the first factor, the Court is well aware that a number of courts in this district have found that other detainees raising similar claims of unconstitutional conditions of confinement have held that those detainees successfully demonstrated that they were being confined under conditions that pose a substantial risk to their health. However, many such findings are based on the fact that the detainee's specific health conditions put him at a heightened risk for health complications if exposed to COVID-19. *See, e.g., Basank*, 2020 WL 1953847, at *7 ("Petitioners are at particular risk for serious illness or death, because their preexisting medical conditions either make them more vulnerable to contracting COVID-19, or more likely to develop serious complications due to COVID-19, or both."); *Valenzuela Arias*, 2020 WL 1847986, at *1 ("Each Petitioner suffers from medical conditions that place him at imminent risk of death or serious injury in immigration detention if exposed to COVID-19."); *Avendano Hernandez v. Decker*, No. 20-CV-1589, 2020 WL 1547459, at *1 (S.D.N.Y. Mar. 31, 2020) ("Petitioner suffers from several severe medical conditions."); *Coronel*, 2020 WL 1487274, at *1 ("Each of [the petitioners] suffer[] from medical conditions that render them particularly vulnerable to severe illness or death if infected by COVID-19—vulnerabilities that are heightened in detention." (internal quotations omitted)).

Petitioner in the case at bar is situated differently. Here, there is no evidence that Petitioner is at a heightened risk of exposure to COVID-19. As Petitioner admits, he does not have the "kind of dangerous, chronic health condition that ha[ve] caused other courts to order the release of the most vulnerable of ICE detainees." *See* Pet. Reply at 10. Furthermore, a full review of Petitioner's medical records fails to establish that Petitioner suffers from any serious medical conditions and

fails to substantiate Petitioner's claim that he has a chronic heart condition. Petitioner himself concedes that he does not have medical records that support his assertion that he has a chronic heart condition.[4] *Id.* at 13 n.26. Finally, Petitioner does not fall into a category of detainees that have been identified as at high risk to the consequences of COVID-19 exposure according to ICE guidance. *See* Mem. of Law in Supp. Resp't Return at 10. Therefore, while the Court is alert to the increased risk to the entire inmate and detainee population posed by COVID-19, the Court finds that Petitioner has not demonstrated that the threat of COVID-19 exposure poses an excessive risk to this Petitioner's health.

Furthermore, Petitioner cannot demonstrate that Respondents were deliberately indifferent to Petitioner's safety. Indeed, Respondents have taken extensive measures to reduce the likelihood that detainees at OCJ will be exposed to COVID-19 and to ensure that if an inmate, detainee, or staff member is exposed to COVID-19, that proper procedures are in place to reduce the spread of COVID-19 throughout the facility. These measures include: (1) beginning on March 23, 2020, all ICE detainee intake was suspended indefinitely, (Doc. 22-1, "Mele Decl.," ¶ 9(a)); (2) all new inmates to the facility are screened and asked specific questions related to whether the new inmate may have come into contact with someone who tested positive for COVID-19, *id.* ¶ 9(b); (3) any new inmates that exhibit symptoms consistent with COVID-19 are isolated and monitored, *id.*; (4) all visitation and facility tours have been suspended, *id.* ¶ 9(c); (5) anyone entering the facility including staff members and vendors are medically screened, *id.* ¶ 9(d); (6) all staff members in the facility wear masks, *id.* ¶ 9(e); (7) all inmates and detainees have been issued facemasks which

---

[4] The Court will not consider the "medical records" submitted by Petitioner which purportedly shows that he was diagnosed with Cardiac Vegetative Dysfunction in 2008 in Russia. The Federal Rules of Evidence generally apply to habeas proceedings. *See Loliscio v. Goord*, 263 F.3d 178, 186 (2d Cir. 2001) ("We began our consideration of the district court's denial by noting that the Federal Rules of Evidence apply in federal habeas proceedings."); *Bibbins v. Dalsheim*, 21 F.3d 13, 16 (2d Cir. 1994) ("In assessing petitioner's [habeas] claim of prejudice, we apply the Federal Rules of Evidence."). The documents submitted by Petitioner are inadmissible as they are not authenticated and are hearsay concerning other documents which are not before the Court.

they are required to wear and to clean daily, *id.* ¶ 9(f); (8) inmates or detainees that complain of illness are immediately treated and/or monitored, *id.* ¶ 9(g); (9) any inmate or detainee that exhibits signs of COVID-19 is placed in a separate housing unit, *id.*; (10) detainees who have had known exposure to COVID-19, but are asymptomatic, are placed in a separate housing unit, *id.* ¶ 9(j); (11) OJC has increased the frequency of cleaning at the facility, *id.* ¶ 9(l); (12) inmates and detainees are fed inside their cells so they do not congregate at meal times, *id.*; (13) hand sanitizer, bleach, soap, and disinfectant spray have been put in every housing unit and are readily available to inmates and detainees, *id.*; and (14) the facility has sought to educate staff, detainees, and inmates about proper health precautions such as handwashing, social distancing, covering coughs with elbows instead of hands, and seeking medical care if they feel ill, *id.* ¶ 9(m).

Given these precautionary measures, Petitioner cannot demonstrate that Respondents have acted with deliberate indifference to the medical needs of detainees housed within OCJ. *See, e.g., Graham v. Decker*, No. 20-CV-2423, 2020 WL 1847568, at *6 (S.D.N.Y. Apr. 13, 2020) (finding Orange County Correctional facility's response to the COVID-19 threat did not demonstrate deliberate indifference). The COVID-19 pandemic, which individuals around the world are enduring, is posing new and difficult challenges to ensure that detained individuals are kept safe and healthy. The measures taken by OCJ officials demonstrate substantial efforts to reduce the likelihood of the spread of COVID-19 throughout the OCJ detainee population. The Court finds that such precautionary measures demonstrate that Respondents have not recklessly failed to act to protect the health and safety of ICE detainees. Therefore, the Court finds that not only has Petitioner failed to demonstrate that he is likely to succeed on the merits of his habeas application, but that Petitioner has failed to state a due process claim under the Fifth and Fourteenth Amendments that he is being housed under unconstitutional conditions.

The Court also finds that Petitioner has failed to demonstrate that he is likely to suffer irreparable harm because he has failed to (1) establish a viable constitutional injury, or (2) demonstrate that he "faces substantial harm caused by the highly infectious COVID-19." *See* Pet. Prelim. Inj. Appl. at 6. While the Court is mindful of the seriousness of the COVID-19 pandemic, and the specific threat COVID-19 poses to prisoners and civil detainees, Petitioner has failed to demonstrate that he is likely to suffer an injury that is actual and imminent as opposed to remote and speculative. *See Faiveley Transp. Malmo AB*, 559 F.3d at 118. A number of factors lead the Court to this conclusion including: (1) as Petitioner admits, he does not have the "kind of dangerous, chronic health condition that ha[ve] caused other courts to order the release of the most vulnerable of ICE detainees," *see* Pet. Reply at 10; (2) a full review of Petitioner's medical records fails to establish even the possibility of a chronic heart condition; (3) Petitioner himself concedes that his medical records do not support the existence of a chronic heart condition, *id.* at 13 n.26; (4) Petitioner is not a detainee at high risk to the consequences of COVID-19 exposure according to ICE guidance, *see* Mem. of Law in Supp. Resp't Return at 10; (5) as of May 5, 2020, there were no detainees or inmates at OCJ who were symptomatic or who had tested positive for COVID-19, *see* Doc. 22 at 2; and (6) OCJ has implemented a variety of cautionary measures to decrease the likelihood that civil detainees will be infected with COVID-19 as discussed separately in this Order.

Therefore, the Court finds that Petitioner has not satisfied his burden of demonstrating irreparable harm because Petitioner's health conditions and the conditions of confinement at OCJ indicate that any future injury Petitioner may suffer is remote and speculative as opposed to actual and imminent.

With respect to the balance of equities, on balance, given the complete paucity of facts in the record that demonstrate that Petitioner's health puts him at a heightened risk if exposed to COVID-19, the COVID-19 mitigating steps that OCJ has implemented, and Respondents' interest in enforcing the clear Congressional mandate that certain non-citizens facing removal be detained, the Court cannot conclude that the balance of equities tips in Petitioner's favor.  Undoubtedly, Respondents have an interest in enforcing the country's immigration laws. That enforcement interest is particularly strong where, as here, Petitioner was removed on grounds for which mandatory detention is required. The Court finds that the balance of equities does not tip in Petitioner's favor.

Finally, the issuance of an injunction is not in the public interest. There is a strong public interest in preventing continued constitutional violations. However, where, as here, Petitioner cannot establish that such violations exist, that public interest dissipates. There is also a strong public interest in the enforcement of immigration laws. *See Walker v. Ashcroft*, No. 04-CV-1057, 2004 WL 1542277, at *1 (D. Conn. July 2, 2004). Congress has determined that mandatory detention is in the public interest in the circumstances presented and the Supreme Court has established that Petitioner's confinement is presumed to be constitutionally compliant. On balance, the Court does not find that a preliminary injunction authorizing the release of Petitioner during the pendency of a mandatory detention period is in the public interest.

Accordingly, for the reasons set forth herein, the Court finds that, based on the narrow set of facts at issue herein, Petitioner has failed to satisfy his burden of demonstrating that the Court should grant Petitioner preliminary injunctive relief; and, therefore, the Court denies Petitioner's request for preliminary injunctive relief.

II.   Petitioner's Habeas Application

The Court has already held separately herein that Petitioner's habeas application is not only unlikely to succeed on the merits, but that Petitioner has failed to state a claim for relief alleging that he is being confined under unconstitutional conditions and/or for an improper and prolonged detention period. Accordingly, the Court finds, for those same reasons, that Petitioner has failed to satisfy his burden of proving by a preponderance of the evidence that he is being confined under unconstitutional conditions and/or for an improper and prolonged detention period. The Petitioner's habeas petition is therefore dismissed.

Similarly, the Court denies Petitioner's request for a bail hearing pursuant to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). The Second Circuit held in *Mapp* "'that the federal courts have inherent authority to admit to bail individuals properly within their jurisdiction' including immigration detainees petitioning for habeas relief." *Basank*, 2020 WL 1953847, at *13 (quoting *Mapp*, 241 F. 3d at 226). The Court may grant bail to habeas petitioners when (1) the habeas petition raises substantial claims and (2) "extraordinary circumstances exist[] that make the grant of bail necessary to make the habeas remedy effective." *Mapp*, 241 F. 3d at 226 (quoting *Grune v. Coughlin,* 913 F.2d 41, 43–44 (2d Cir.1990)). For the same reasons as previously set forth herein, the Court finds that Petitioner's habeas petition does not raise substantial claims, and there are no extraordinary circumstances associated with this petition that make the grant of bail necessary to make the habeas remedy effective. Accordingly, Petitioner's request to be released on bail pursuant to *Mapp v. Reno* is denied.

## CONCLUSION

Based on the foregoing, Petitioner's motion for a preliminary injunction is DENIED and Petitioner's habeas petition is DISMISSED.

The Clerk is instructed to terminate this proceeding.

SO ORDERED:

Dated: New York, New York
      May 26, 2020

Philip M. Halpern
United States District Judge